IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FRED ALEXANDER | § | |
| v. | § | CIVIL ACTION NO. 6:04cv512 |
| LARRY BENSON, ET AL. | § | |

MEMORANDUM OPINION AND PARTIAL ORDER OF DISMISSAL

The Plaintiff Fred Alexander, an inmate of the Texas Department of Criminal Justice, Institutional Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining that his constitutional rights were violated during his confinement in the prison. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

An evidentiary hearing was conducted pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), on April 5, 2005. At this hearing, the parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this action. The lawsuit was subsequently assigned to the docket of the undersigned United States Magistrate Judge for entry of final judgment in accordance with the consent of the parties.

At the hearing, Alexander testified that on April 15, 2004, he was standing in a stairwell at the Beto I Unit of TDCJ-CID, waiting to go to chow and talking to an officer named Skinner. Sgt. Benson approached and told him to get into the hallway and get on the wall. Benson stated that he was going to lock Alexander up for threatening Skinner, but Alexander said that he had not threatened Skinner. Benson threatened to hit him with the handcuffs. Sgt. Childress came up and began shaking his gas canister. Lt. McDaniel also approached, and Alexander told him that he had not done anything wrong.

Alexander stated that Benson then handcuffed him, took his cup and cane and threw them aside, and then threw him to the floor.  He said that Benson told McDaniel that Alexander had threatened Skinner and was making noise in the hall, but Skinner said that Alexander had not threatened him.  Alexander stated that he was taken to the infirmary, and that Lt. Foreman came there and told the officers to release him.  However, Alexander said, Nurse Kitchens would not let him leave the infirmary because his blood pressure was too high.  As a result of the incident, Alexander said, he re-injured his back, hip, and knee, and suffered pelvic pain.

Alexander testified that he did not intend to name Officer Skinner as a Defendant, and so asked that Skinner be dismissed.  He said that Sgt. Childress had threatened him, but acknowledged that Childress did not actually do anything because Lt. McDaniel was at the scene.

Alexander stated that McDaniel could have stopped the incident, but acknowledges that he, Alexander, was facing the wall while McDaniel talked to Skinner.  He said that his claim against Lt. Foreman was based on the fact that Foreman had the video camera turned off while Alexander was in the infirmary, in contravention of TDCJ-CID policy requiring that the camera be kept running until he was placed back in his cell.

Alexander initially indicated that he did not want to sue Nurse Kitchens, but then said that Kitchens did not document the use of force.  He said that Parker and Bonnse were grievance investigators, and that his Step Two grievance was sent to the law library, instead of being sent directly to him, and that this delayed his receipt of the grievance.

Similarly, Alexander complained that the law library officers, Baldwin and Becraft, took it upon themselves to investigate grievances, even ones which did not concern law library matters.  He stated that on one occasion, he sent a piece of unspecified legal mail, but then saw it in the law library some two to three weeks later.  Alexander insisted that Baldwin and Becraft investigated all types of grievances even though they were not supposed to.

Warden Thompson, a prison official also present at the hearing, testified under oath that unit wardens can designate alternate grievance investigators, and that law library officers are often so

designated. Philip Brooks, a regional grievance coordinator, appeared at the hearing and gave sworn testimony that there was no documented use of force, so no videotape existed. Alexander's complaint indicates that Benson called for a camera after the use of force had taken place, so it is not clear what tape made at that time would show.

Legal Standards and Analysis

Alexander's primary claim is that Sgt. Benson used excessive force against him without justification. He said that Benson accused him of threatening Skinner, handcuffed him, and threw him to the ground.

The use of excessive force upon inmates with malicious and sadistic intent, for the very purpose of causing harm, can if proven show a constitutional violation. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992); Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998). Alexander's allegations, if proven, show a possible constitutional violation. His claim against Benson requires further judicial proceedings.

Alexander says that Sgt. Childress threatened him, but did not actually strike him. The Fifth Circuit has held that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The use of words, no matter how violent, does not comprise a section 1983 violation. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). This claim is without merit.

Alexander also says that Childress and Lt. McDaniel should have prevented the use of force. However, he stated that the use of force occurred through Benson placing one hand on his handcuffs and one on the back of his collar, and throwing him to the floor.

The courts have held that where a use of force is so rapid that there is no realistic opportunity to intervene, there is no liability on the part of officers who fail to do so. O'Neill v. Krzeminski, 839 F.2d 9, 11 (2nd Cir. 1988). Alexander has offered nothing to show that Childress or McDaniel had a realistic opportunity to intervene in the actual use of force, which by Alexander's own description

lasted no more than a few seconds.[1] Alexander's claims against Childress and McDaniel are without merit.

To the extent that Alexander says that McDaniel was liable because of his position of authority, this claim is likewise untenable. The Fifth Circuit has stated that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which does not generally apply in Section 1983 cases. Williams v. Luna, 909 F.2d 121 (5th Cir. 1990). A supervisor may be held liable if there is personal involvement in a constitutional deprivation, a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force behind a constitutional deprivation. Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987).

In this case, Alexander has failed to meet any of the criteria for supervisory liability by McDaniel. For this reason, his claim against McDaniel should be dismissed.

Next, Alexander sues Lt. Foreman, complaining that Foreman had the video turned off while Alexander was in the infirmary. He testified that this action violated TDCJ-CID policy requiring that the video be kept on until he is returned to his cell. The Fifth Circuit has held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). Alexander has not shown that the turning off of the video camera while he was in the infirmary, rather than when he returned to his cell, violated any rights protected by the Constitution or laws of the United States. His claim against Lt. Foreman is without merit.

Alexander stated that Nurse Kitchens did not document the incident in the medical records. The medical records show an entry on a document labeled "emergency record," which says that

---

[1] While the overall confrontation between Alexander and Benson lasted somewhat longer, neither Childress nor McDaniel had a constitutional duty to intervene when Benson was simply talking to Alexander. It was the alleged constitutional deprivation - the use of force which Alexander says took place - that gave rise to such a duty.

Alexander came into the clinic at the Beto I Unit on April 15, 2004, at 5:55 p.m.  His complaint was that his blood pressure was elevated after an altercation in the hall, and the nurse determined that his blood pressure was elevated and that he denied any injuries.  His blood pressure was read at 6:00 p.m. as 184 / 114, which is significantly elevated; he was given a medication called clonidine, and over the course of the next two hours, his blood pressure dropped to 126 / 91.

There are also two clinic note sheets dated April 15, 2004.  The first of these, at 6:54 p.m., reflects that security brought Alexander to the emergency room for an exam after he fell in the hall.  The document reflects that Alexander is an "elderly offender who walks with a cane," and says that no injuries were noted but that his blood pressure was "extremely elevated," so he was placed on his left side in an effort to lower his blood pressure.  The second clinic note sheet is listed at 6:57 p.m., and simply says that the ER sheet was initiated by Nurse Kitchens and that "orders were rec'd to Dr. Clayton."

Alexander's claim that the incident was not documented is thus not entirely accurate; the incident was documented, although not necessarily in the way that he believed appropriate.  He has failed to show that Nurse Kitchens was deliberately indifferent to his serious medical needs.  *See* Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001).  Alexander's claim against Nurse Kitchens is without merit.

Alexander asserted that his Step Two grievance was sent to the law library, instead of being sent directly to him, and that this delayed his receipt of the grievance.  He sued individuals identified as Parker and Bonnse, whom he said were grievance investigators.

It is not clear that the grievance investigators were responsible for the return of grievances to him, rather than the persons who answered the grievance.  Nor has he shown a constitutional violation in the fact that the grievance were sent to the law library, rather than being returned directly to him.  The Fifth Circuit has held that to obtain relief under the Civil Rights Act, 42 U.S.C. §1983, a person must show two elements.  These are: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was done by a person acting

under color of state law. Johnson v. Dallas Independent School District, 38 F.3d 198, 199 (5th Cir. 1994). Alexander has not shown, nor does it appear, that returning grievances to the law library rather than to the grievant amounts to the deprivation of a right secured by the Constitution or laws of the United States.

In addition, Assuming that the grievances were supposed to be returned back to him, Alexander does not show that the sending of his grievances to the law library was done intentionally, rather than negligently or by mistake. The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment is not implicated by a negligent act of an official causing unintended injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327, 331-33 (1986). Alexander's claims against Parker and Bonnse are without merit.

Alexander also sues two law library officers named Baldwin and Becraft, alleging that these individuals took it upon themselves to investigate grievances, even ones which did not concern law library matters. Warden Thompson testified that unit wardens can designate alternate grievance investigators, and that law library officers are often so designated.

Even if Baldwin and Becraft were not so designated, however, Alexander has failed to show a constitutional violation. He has no liberty interest in having his grievances investigated by officers of his choosing. A number of other courts have held that inmate grievance procedures are not constitutionally required, and so violations of such procedures do not deprive inmates of constitutionally protected rights. Spencer v. Moore, 638 F.Supp. 315, 316 (E.D. Mo. 1986), *citing* O'Bryan v. County of Saginaw, 437 F.Supp. 582 (E.D. Mich. 1977); *see also* Azeez v. DeRobertis, 568 F.Supp. 8 (N.D. Ill. 1982). The Eighth and Ninth Circuits have held that inmates have no legitimate claim of entitlement to a grievance procedure, and thus no protected liberty interest exists. Mann v. Adams, 855 F.2d 639 (9th Cir.), *cert. denied* 109 S.Ct. 242 (1988); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).

The Fifth Circuit has stated, in an unpublished opinion, that because the prison grievance procedure does not affect the duration of an inmate's confinement, the inmate cannot establish that

he has a state-created liberty interest in that procedure. Cole v. Abbott, slip op. no. 03-41499 (5th Cir., March 4, 2004) (unpublished), *citing* Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). This essentially tracks the reasoning of the Eighth and Ninth Circuits. In a similar case, the Fifth Circuit has stated that a prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue. Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). Thus, Alexander's claim that grievances were investigated by persons whom he believes should not have done so does not set out a constitutional claim.

Finally, Alexander stated that on one occasion, he sent a piece of unspecified legal mail, but then saw it in the law library some two to three weeks later. Alexander does not specify what this item was, nor does he show any harm from the incident which he describes.

The Supreme Court has held that inmates have a right of access to legal materials, and prison officials cannot deny inmates access to court. Bounds v. Smith, 430 U.S. 817 (1976). However, actual injury must be shown to set out a violation of Bounds. Lewis v. Casey, 116 S.Ct. 2174, 2179-81 (1996) (actual harm must be shown to establish a violation of the right of access to court); *accord*, Mann v. Smith, 796 F.2d 79, 83 (5th Cir. 1986). In this case, even assuming that the incident which Alexander describes sets out a claim of denial of access to court, he has failed to show any harm, and so his claim on this point must fail.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory.

Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke, 490 U.S. at 327, *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, all of Alexander's claims except for his claim that Officer Benson used excessive force against him lack an arguable basis in law and fail to state a claim upon which relief may be granted. Consequently, these claims may be dismissed as frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the plaintiff's claims against Officer Skinner, Lt. Foreman, Sgt. Childress, Lt. McDaniel, Lt. Baldwin, Officer Becraft, Nurse Kitchens, and investigators Parker and Bonnse be and hereby are DISMISSED as frivolous and for failure to state a claim upon which relief may be granted. It is further

ORDERED that Officer Skinner, Lt. Foreman, Sgt. Childress, Lt. McDaniel, Lt. Baldwin, Officer Becraft, Nurse Kitchens, and investigators Parker and Bonnse are hereby DISMISSED as parties to this lawsuit. The dismissal of these claims and parties shall have no effect upon the plaintiff's claim against Sgt. Benson. Finally, it is

ORDERED that the dismissal of these claims and parties shall not count as a strike for purposes of 28 U.S.C. §1915(g).

So **ORDERED** and **SIGNED** this **21** day of **April, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE