IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| FRED FRANKLIN ALEXANDER | § | |
| v. | § | CIVIL ACTION NO. 6:04cv512 |
| LARRY BENSON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Fred Alexander, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action under 42 U.S.C. §1983 complaining of alleged violations of his civil rights during his confinement in the prison. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

An evidentiary hearing was conducted on April 5, 2005, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing, Alexander testified concerning his claim that excessive force was used on him on April 15, 2004. The parties consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding; the lawsuit was subsequently transferred to the docket of the undersigned United States Magistrate Judge for entry of final judgment in accordance with the consent of the parties. 28 U.S.C. §636(c).

Following the hearing, all of the Defendants except for Sgt. Larry Benson were dismissed. After Sgt. Benson filed his answer, the lawsuit was scheduled for a trial before the Court. The parties were notified that they could call and cross-examine witnesses and introduce documentary and other evidence in support of their respective contentions. The trial before the Court was conducted without objection on March 28, 2006.

1

At trial, Alexander testified that on April 15, 2004, he was talking to Officer Skinner in the stairwell while waiting for chow. Sgt. Benson came over and ordered him to go into the hallway, accusing him of having threatened Skinner. Alexander said that he had not threatened Skinner. Benson had him stand on the wall and spread his legs for a search. Lt. McDaniel and Officer Childress came up, and Alexander told McDaniel that he had not done anything wrong. McDaniel went over to talk to Skinner, Alexander said, and Benson grabbed him from the wall and threw him to the ground. Alexander said that he had not done anything to provoke this.

A captain came to the scene and told Benson that the force was "unnecessary," Alexander said. Two officers took him to the infirmary. A video camera was there but Lt. Foreman told the officers to turn it off. Foreman told Nurse Kitchens to release Alexander, but Kitchens refused, saying that Alexander's blood pressure was too high. Alexander says that he received medication and stayed in the infirmary for about an hour.

Alexander also testified that Benson took his cup and cane and threw them down the hall. He said that Sgt. Childress was "shaking his gas canister" and so he was afraid that he was going to be sprayed with chemical agents.

Alexander said that he had pre-existing problems with his knee and his back, and that this incident aggravated these problems. He also said that the incident caused a new problem in his neck. Alexander stated that he went to the infirmary "a couple of times" for these problems, and that he had knee surgery scheduled in January of 2005, but the doctor canceled it without telling him why. He acknowledged that this surgery was not necessitated by the incident in this lawsuit.

On cross-examination, Alexander said that he was on L-wing, in general population, waiting to go to chow. He said that other inmates had probably witnessed the incident, but that he did not know if any of them had filled out incident reports. Alexander stated that the handcuffs were removed when he got to the infirmary, and acknowledged that Nurse Kitchens treated him for high blood pressure. Alexander conceded that he did not complain of injuries to his neck or back that day, but that he did complain about them at a later time.

Officer Scott Skinner testified that he was an officer at the Beto Unit on April 15, 2004, but that he did not recall any such incident as Alexander described. He did state that he did not recall ever seeing Sgt. Benson mistreat inmates, and that he would recall if Benson had grabbed an inmate and thrown him to the ground, but stated that he did not remember anything like that.

Lt. John McDaniel testified that he did not recall the incident, but that he would have recalled an incident which happened as Alexander described. He said if a use of force had taken place, a video camera would have been called (and not cut off), Alexander would have been placed in pre-hearing detention rather than returned to his cell, an investigation done, written statements taken, and a use of force report done, which would be reviewed in the warden's office. McDaniel said that a failure to report a use of force would result in disciplinary action being taken.

McDaniel also observed that on April 15, 2004, he was assigned to administrative segregation, not general population. He stated that he would remember if he had been called from his post over to L Wing. McDaniel reiterated that if an officer witnessed an incident and did not report it, that officer would be subject to disciplinary action.

Sgt. Joe Childress testified that he also was assigned to administrative segregation on April 15, 2004. He stated that he did not recall the incident and that he would not have been over on L Wing unless he had been called out there. Childress noted that he would have remembered the incident if it had happened as Alexander described.

Childress said that he did not remember if a grievance had been filed. Alexander pointed out that a grievance had been filed, in which Benson, Childress, McDaniel, and Skinner were named. Childress said that he did not remember being part of an investigation, and the response to the grievance was read into the record; this response said that according to Benson, Alexander had fallen down by himself.

Sgt. Larry Benson testified that on April 15, 2004, he was working in the hallway. He said that at the present time, he had no recollection of the incident. Benson specifically denied throwing

3

Alexander to the floor, saying that he would remember if that had occurred. Benson added that he would have followed proper use of force procedures if a use of force had occurred.

On cross-examination, Benson again denied throwing Alexander to the ground. Alexander asked if an accident report had been completed, and Benson said no. Benson read his own statement concerning the incident, given in May of 2004, denying that any use of force had taken place.

The exhibits offered at trial contained a document called a "fact sheet for OIG [Office of the Inspector General] Investigation Division." This sheet listed Skinner and Childress as witnesses, but Benson explained that this information was taken directly from Alexander's grievance, which had named Skinner and childress as having been present. Benson said that he did not recall being asked about Alexander's grievance, citing the quantity of grievances which get filed. He said that he would "definitely" remember if a use of force had occurred, and pointed out that he had not been disciplined for failing to file an accident report.
Furthermore, Benson said that if a use of force had occurred, he would have been sent to the infirmary along with Alexander, and that he would be subjected to disciplinary action if he failed to report a use of force.

Dr. Monte Smith, D.O., testified concerning the contents of Alexander's medical records. Dr. Smith said that according to the clinic notes, he was received in the medical department at 6:54 p.m. on April 15, 2004, for an examination. This exam found no injuries, but that Alexander's blood pressure was very high. An emergency room sheet, which Dr. Smith said was done because the physician was contacted, noted that Alexander had fallen in the hall because of an altercation, but that Alexander denied any injuries. The physician sent an order for clonidine, a blood pressure medication, and Alexander responded well to this medication and was released at 8:00 p.m.

Dr. Smith added that while Alexander made complaints after this incident, none of these complaints were specifically linked to a use of force in April of 2004. He stated that the notations that Alexander had fallen and that there had been an altercation in the hall were subjective, meaning that this information had come from Alexander himself.

Dr. Smith stated that Alexander had a number of medical problems even prior to this incident, including an artificial left knee, laxity of the right anterior cruciate ligament, and a history of high blood pressure. He had a considerable number of work restrictions, including restrictions for sedentary work only, limited standing, no walking over 200 yards, no lifting over 50 pounds, no bending at the waist, no squatting, no climbing, no walking on wet uneven surfaces, no work requiring safety boots, and no work involving exposure to loud noises. Dr. Smith said that depending on the amount of force used, a throw to the ground would have normally resulted in injuries, given Alexander's condition at the time. He again said that there were no subsequent complaints relating to this incident. Alexander asked about an X-ray report in the records, taken in October of 2004, but this report said that it was taken because of a complaint of left arm and shoulder pain over the preceding seven days.

Warden Chuck Biscoe testified that if there had been an accident, it would have been normal for someone to report it. He said that the inmate who fell would normally have been assisted to the infirmary, and stated that he was not surprised that Alexander was escorted to the infirmary in this case. He said that it would be "very strange" if three ranking officers, as well as officers and inmates, witnessed a use of force and no one reported it. Finally, Warden Biscoe noted that the Office of the Inspector General declined to open a case when the incident was referred to them based on Alexander's grievance.

Legal Standards and Analysis

In a civil action, the plaintiff has the burden of proof to establish issues of fact by a preponderance of the evidence. <u>Vogel v. American Warranty Home Service Corp.</u>, 695 F.2d 877, 882 (5th Cir. 1983). A "preponderance of the evidence" means the greater weight of the evidence; it is that evidence which, when weighed with that opposed to it, has more convincing force and is more probably true and accurate. If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then the plaintiff has not met his burden of proof. <u>Smith v. United States</u>, 726 F.2d 428, 430 (8th Cir. 1984).

In this case, Alexander testified that a use of force had occurred. The Defendant Sgt. Benson, and his witnesses, testified that they did not recall any use of force occurring and that had such an incident occurred, they would have recalled it. In addition, Sgt. Benson denied ever using force on Alexander in a manner such as Alexander described.

While I did not find the Plaintiff's testimony to be wholly incredible or unbelievable, neither did I find that his testimony had more convincing force or greater weight than that of the Defendants. Instead, I found the evidence offered by the parties to be equally balanced, not weighing more heavily on either side. Thus, I must conclude as a matter of law that the Plaintiff has failed to meet his burden of proof and that judgment should be entered for the Defendants.

The Supreme Court has held that inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline; the Court added that the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992). It should be noted that not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom.* John v. Johnson, 414 U.S. 1033 (1973) (cited with approval in Hudson, 112 S.Ct. at 1000).

I have reviewed the five <u>Hudson</u> factors in light of the evidence presented in this case. The first factor, concerning the extent of the injury suffered, weighs against the Plaintiff. Although Alexander testified, in a general way, that his neck, back, and legs were injured by the actions of Sgt. Benson, the medical record does not bear him out. When he was seen on the day of the incident, he had no injuries and in fact denied any injuries. While his blood pressure was elevated, the medical records show that Alexander had a history of high blood pressure, and so the source of the elevation on this date is not apparent, particularly in light of the complete lack of injuries. In addition, Alexander made no complaints subsequent to April 15, 2004, referencing the incident of which he complains. The evidence concerning the first <u>Hudson</u> factor plainly weighs against Alexander.[1]

The second and third factors involve the need for the application of force and the relationship between the need and the amount of force used. As noted above, Alexander has the burden of showing by a preponderance of the evidence that the amount of force used was disproportionate to the need and that the force was not used in a good faith effort to restore discipline, but rather maliciously and sadistically for the very purpose of causing harm. He has not met his burden. The evidence presented to the Court weighs equally between a conclusion that force was used with malice and a conclusion that no force was used at all. Because Alexander has the burden of proving malice by a preponderance of the evidence and has not met this burden, his claim necessarily fails.

The fourth <u>Hudson</u> factor concerns the threat reasonably perceived by responsible officials. Here again the evidence is equally weighted. The Plaintiff's evidence showed that no threat existed to justify a use of force which occurred, while the equally credible evidence put on by the Defendants

---

[1] Alexander's failure to show that he was injured as a result of the incident is fatal to his claim as well, because in Eighth Amendment cases involving claims of excessive use of force, the Fifth Circuit has expressly held that the claimant must show injuries that are more than *de minimis*, even if not "significant, serious, or more than minor." <u>Gomez v. Chandler</u>, 163 F.3d 921 (5th Cir. 1999); *accord*, <u>Hudson v. McMillian</u>, 503 U.S. 1, 7, 112 S.Ct. 995, 999 (1992) ("The Eighth Amendment's prohibition of cruel and unusual punishment **necessarily excludes** from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (emphasis added). *See also* <u>Jackson v. Culbertson</u>, 984 F.2d 699 (5th Cir. 1993); <u>Siglar v. Hightower</u>, 112 F.3d 191 (5th Cir. 1997).

indicated that no use of force occurred at all. The Plaintiff has failed to show by a preponderance of the evidence that the fourth <u>Hudson</u> factor weighs in his favor.

The last factor identified by the Fifth Circuit in <u>Hudson v. McMillian</u> involves the efforts made to temper a forceful response. Alexander's testimony showed that he was thrown to the ground without provocation. The testimony of the Defendants showed that there was no use of force and that the incident did not occur. These two competing versions were equally credible and carried equal weight; accordingly, Alexander has failed to prove his claims by a preponderance of the evidence, as is his burden. It is therefore

ORDERED that judgment be and hereby is entered, that the Plaintiff Fred Alexander shall take nothing on his lawsuit from the Defendant Larry Benson. Rules 52(a) and 58, Fed. R. Civ. P. It is further

ORDERED that the above-styled civil rights lawsuit is hereby DISMISSED with prejudice. Finally, it is

ORDERED that all motions filed by any party which may be pending in this action are hereby DENIED. All parties shall bear their own costs.

So **ORDERED** and **SIGNED** this **28** day of **March, 2006.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE